UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SUNDANCE BOTANICALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:20-CV-141-PPS-JPK |
| | ) |
| THE POWER OF ELDERBERRIES, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This trademark infringement case presents us with the tale of dueling elderberry syrups. In one corner is the plaintiff, Sundance Botanicals, which produces an elderberry syrup called "Elderpower." In the other is the defendant, The Power of Elderberries, which makes a competing syrup called, well, "The Power of Elderberries." The Power of Elderberries seeks dismissal of the complaint on two grounds: improper venue and a lack of personal jurisdiction. Alternatively, if I don't outright dismiss this case, The Power of Elderberries requests to transfer this matter to the United States District Court for the District of South Carolina, where it is based. The motions present exceedingly close issues. But, ultimately, because I find that the Power of Elderberries has more than sufficient minimum contacts with the State of Indiana, and venue is otherwise proper, the motions to dismiss will be denied.

### Background

The facts are largely unimportant right now. It's enough to say that since 2012, Sundance has sold its elderberry syrup, starting first from its home base in Indiana and

then expanding across the country over the years. [Compl., DE 1, at ¶¶ 10-14.] Sundance now sells Elderpower in approximately 80 retail outlets across the country, through its website, and attends many shows and markets. [Compl. ¶ 12.] The Power of Elderberries is a family-owned business that has operated in and from Myrtle Beach, South Carolina, since 2018. [DE 15-1 ¶¶ 2-3.] Sundance alleges that The Power of Elderberries violated its trademark associated with elderberry syrup and infringed on Plaintiff's designation, "Elderpower." Specifically, it alleges The Power of Elderberries uses a similar font, packaging, and marketing in its elderberry syrup. Whether any of that is true is for another day.

At least one local retailer — BUN's Soapbox in Valparaiso — has sold the Power of Elderberries' syrup. [Compl. ¶ 16.] BUN's Soapbox is nearby at least 4 retail locations selling Sundance's elderberry syrup, including a retail outlet located just a few hundred feet away. [*Id.*] Although The Power of Elderberries claims it has not advertised within the State of Indiana, its Facebook site does advertise BUN's Soapbox as being its "New Retailer Indiana!" and touts the Power of Elderberries can be found in 6 states, including Indiana. [DE 23-2.] On its website, the Power of Elderberries allows customers to search by zip code for retailers, and it lists BUN's Soapbox in Valparaiso as a retailer. [DE 23-4 at 12.] The website also states that The Power of Elderberries ships nationwide. [*Id.*]

In a declaration, Jessica Lowery, a member of the Power of Elderberries, attests that The Power of Elderberries has sold elderberry syrup to only 7 parties located in

2

Indiana as a result of its website or social media advertising, and 3 of the parties are long-term personal friends or acquaintances of Lowery herself. [DE 15-1 at 2.] Presumably, she has considered BUN's Soapbox as one customer, even though it is a retail shop. Lowery attests that the sale of products to Indiana represents less than .5% of the sales that Plaintiff alleges are at issue in this action. [*Id.*] Additionally, the Power of Elderberries has never maintained a physical place of business within the state of Indiana and no employee or representative of the Power of Elderberries has entered the state of Indiana for the purpose of making sales, advertising products, or otherwise targeting residents of Indiana. [*Id.* at 1-2.]

## Discussion

The Power of Elderberries requests that I dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction or under Rule 12(b)(3) for improper venue. Alternatively, it asks that I transfer the case to South Carolina for improper venue. Although The Power of Elderberries begins with the question of venue, I'll start instead with the personal jurisdiction issue because it is a threshold issue dealing with the power of the court. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted) ("Without jurisdiction the court cannot proceed at all in any cause"); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (quotation omitted) ("[p]ersonal jurisdiction refers to a court's power to bring a person into its adjudicative process.").

A federal court's personal jurisdiction is determined by the laws of its forum

3

state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Indiana's long-arm statute allows jurisdiction so long as it's consistent with the Due Process Clause of the Fourteenth Amendment. Ind. R. Trial. P. 4.4; *Rodriguez v. Cavitec AG*, No 1:09-CV-336-JVB, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). As a result, the state and federal inquiries merge and the determinative issue is whether the exercise of jurisdiction over The Power of Elderberries comports with the federal Due Process Clause. *Tamburo*, 601 F.3d at 700; *McKannan v. National Council of Young Men's Christian Assocs. of the U.S.*, No. 3:10-cv-88-RLY-WGH, 2010 WL 4668437, at *3 (S.D. Ind. Nov. 9, 2010).

Personal jurisdiction can be either general or specific. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex*, 623 F.3d 440, 444 (7th Cir. 2010). General jurisdiction is proper in the "limited number of fora in which the defendant can be said to be 'at home'" such as a corporation's state of incorporation or state of the principal place of business. *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). This is plainly not the proper inquiry here, where The Power of Elderberries is neither incorporated in Indiana nor is its principal place of business in Indiana.

Specific jurisdiction, on the other hand, is available for a suit that arises out of the defendant's forum-related activity. That more aptly describes what's at play here. Specific jurisdiction is appropriate where: (1) the defendant purposefully availed itself of the privilege of doing business in a state or purposefully directed its activities at the state, (2) the alleged injury arises out of or relates to the defendant's activities in that

4

state, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702; *see also Felland v. Clifton*, 682 F.3d 665, 672-73 (7th Cir. 2012). This test aims to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The due process clause will not permit personal jurisdiction to be based on contacts with the forum state that are random, fortuitous, or attenuated, or based on the unilateral activity of another party or third person. *Burger King*, 471 U.S. at 475.

Sundance bears the burden of establishing personal jurisdiction, but it need only make a prima facie showing of the jurisdictional facts and is entitled to have any factual conflicts resolved in its favor. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Vera Bradley Designs, Inc. v. Denny*, No. 1:18-cv-70-TLS, 2018 WL 3633986, at *2 (N.D. Ind. July 30, 2018). Here, where The Power of Elderberries has submitted evidence opposing the Court's exercise of personal jurisdiction, to survive the motion to dismiss, Sundance must similarly submit affirmative evidence supporting the exercise of personal jurisdiction. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). When ruling on a motion to dismiss for improper venue, I can examine facts outside the complaint (like the copy of the Facebook page and The Power of Elderberries' website) without converting the motion to one for summary judgment.

5

*Vera Bradley Designs*, 2018 WL 3633986, at *2.

Turning to whether personal jurisdiction exists over The Power of Elderberries, I will first address its website. The Seventh Circuit has recognized the pitfalls associated with determining personal jurisdiction in cases involving the Internet. It has warned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (quoting *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010)).

Generally, it is impermissible to find personal jurisdiction based *only* on the maintenance of a website, even one where purchasing of a product is available, because that defendant is not particularly directing its business activities toward consumers in the forum state. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 ("Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend traditional notions of fair play and substantial justice."); *be2 LLC*, 642 F.3d at 558 (explaining "a defendant must in some way *target* the forum state's market" through the interactive website and noting evidence of 20 Illinois residents using the free dating website was too attenuated to give rise to personal jurisdiction); *AirFX, LLC v. Braun*, No. 1:11-cv-802-WTL-DKL, 2011 WL 5523521, at *3 (S.D. Ind. Nov. 14, 2011) (finding no personal jurisdiction, and noting

6

"[t]he difficulty with basing personal jurisdiction on the pure existence of a website, even one by which purchases can be made, is that such a website is not inherently directed at customers within a certain forum, but is instead available to all customers throughout the country who have access to the Internet.").

Thus, the fact that The Power of Elderberries has a website that Indiana residents can access and order syrup through (as can residents of all the other states too), does not in itself show purposeful availment necessary to exercise personal jurisdiction. The website is universally available, indicates it ships to the entire United States via online sales and delivery [DE 23-4 at 8], and it is not expressly aimed at the people of Indiana.

The real question is whether the website *plus* the one retailer in Valparaiso (BUN's Soapbox) along with The Power of Elderberries advertising BUN's Soapbox as a retailer on its website constitutes more than an attenuated contact with the state of Indiana. In other words, has The Power of Elderberries purposely exploited the Indiana market? *See be2 LLC*, 642 F.3d at 558. This is a very close call. On the one hand, the Power of Elderberries has provided an affidavit stating the sale of its products to Indiana represent less than .5% of the sales that Sundance alleges are at issue in this action and that it has only sold its product to 7 consumers in Indiana (presumably including BUN's Soapbox as one consumer). [DE 15-1 at 2.] Thus its sales in Indiana are small. But on the other hand, Sundance has submitted a picture of The Power of Elderberries' Facebook page advertising that BUN's Soapbox is a "New Retailer Indiana!" and that the Power of Elderberries is expanding and can now be found at

7

retailers in 6 states, including Indiana. [DE 23-2 at 2.]  So it wasn't like BUN's was ordering elderberry syrup and turning around and selling it to the consumer without The Power of Elderberries' knowledge.  Quite the opposite — The Power of Elderberries *knew* about BUN's and bragged about it by affirmatively advertising on its website that BUN's was one of its retailers in Indiana. [DE 23-4 at 12.] That sounds like precisely the kind of "targeting" of a market that the Seventh Circuit was getting at in *be2 LLC*, 642 F.3d at 559.  In other words, The Power of Elderberries did indeed purposefully direct activity toward the Indiana market. *Curry v. Revolution Labs.*, 949 F.3d 385, 398-400 (7th Cir. 2020) (reversing and finding district court had personal jurisdiction where "Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful.").

When The Power of Elderberries affirmatively advertised on its website that BUN's was a retailer in Indiana that sold its product, to me that shows The Power of Elderberries purposefully availed itself of the privilege of doing business within Indiana.  I don't think it offends notions of fair play or substantial justice, and The Power of Elderberries should not be surprised that it could be sued in Indiana when it was specifically directing consumers to its retailer in Valparaiso.  Moreover, Sundance has made a prima facie showing that the alleged injuries inflicted by the Power of Elderberries relate to The Power of Elderberries' contacts with Indiana.  The complaint alleges that The Power of Elderberries was sold in BUN's Soapbox, which was nearby at least 4 retail locations selling Elderpower syrup and it is available across the country

8

through The Power of Elderberries' website. [DE 1 at 5-6.]

In sum, Sundance has made a prima facie showing of personal jurisdiction. Had the Power of Elderberries only had a website and sold to a few people in Indiana, this case would have been bounced for a lack of personal jurisdiction. But the sales to a retailer in Indiana and its advertising of that fact on its website, tips the balance the other way. The Power of Elderberries intentionally directed activities towards and targeted consumers in Indiana and it is an appropriate exercise of power to hale it into court here. And I fail to see a compelling reason based on other considerations that render jurisdiction unreasonable. Even though the Power of Elderberries sales in Indiana are small, as the Seventh Circuit has noted, "There is no unfairness in requiring [a defendant] to defend [a] lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Curry,* 949 F.3d at 402 (quotation omitted). Therefore, I will deny the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

Since I have personal jurisdiction over this matter, now I'll turn to the issue of venue. Sundance states in its reply that it has not requested transfer under 28 U.S.C. § 1404(a) at this time, but instead its alternative request for transfer is based on the court's power to dismiss a suit commenced in an improper venue under Federal Rule of Civil Procedure 12(b)(3) or transfer the suit to a district where it could have initially been filed if transfer is "in the interests of justice" pursuant to 28 U.S.C. § 1406(a). [DE 25 at 8.] While "[p]ersonal jurisdiction is the power to adjudicate, [] venue is the place where

9

judicial authority may be exercised for the convenience of the parties." *Stanley v. Thor Motor Coach, Inc.*, No. 3:19-cv-1124 JD, 2020 WL 5096063, at *3 (N.D. Ind. Aug. 28, 2020) (quotation omitted). Under federal law, there are three categories of proper venue, but the one applicable to this case is: "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2); *see* Compl. ¶ 9. "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Peddinghaus Corp. v. Controlled Automation*, No. 11-2187, 2012 WL 848149, at *5 (C.D. Ill. Feb. 22, 2012) (quotation omitted).

The Power of Elderberries cites the *Vera Bradley* case in its memorandum which states "[t]o demonstrate that a 'substantial part' of the events giving rise to a claim of trademark infringement have occurred in a particular district, the plaintiff can demonstrate *either* substantial sales of the infringing product in the district *or* intentional targeting of the infringing product into the district." *Vera Bradley Designs*, 2018 WL 3633986, at *3 (citation omitted) (emphasis added). While the sales alone in Indiana might not be substantial, The Power of Elderberries took the active step of advertising a retailer in Indiana and marketing business to BUN's Soapbox by listing it as a retailer on its website. In other words, The Power of Elderberries *did* target sales into the Northern District of Indiana, thus venue is also proper. This compels a different result than that in *Vera Bradley*, where the only instances of sales made by the defendants to residents of the Northern District of Indiana were sales initiated by the

10

plaintiff's employees to determine the authenticity of the goods. *Id.* at *3. In this case, we know BUN's Soapbox purchased some amount of The Power of Elderberries' syrup, and we know that The Power of Elderberries advertised BUN's as being a retailer on its website. This constitutes directing activities into this district; therefore, venue is proper here and the motion to dismiss under Rule 12(b)(3) is also denied.

## Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) [DE 14] is DENIED. The alternative request to transfer venue is also DENIED.

SO ORDERED.

ENTERED: September 21, 2020.

                                                       /s/ Philip P. Simon
                                                       PHILIP P. SIMON, JUDGE
                                                       UNITED STATES DISTRICT COURT