UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SUNDANCE BOTANICALS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:20-CV-141-PPS |
| | ) |
| THE POWER OF ELDERBERRIES, LLC, | ) |
| | ) |
| Defendant. | ) |

# **OPINION AND ORDER**

This trademark infringement case involves the tale of two companies dueling with one another in the elderberry market. Plaintiff, Sundance Botanicals, produces an elderberry syrup called "Elderpower." Defendant, The Power of Elderberries, makes a competing syrup by the identical name, "The Power of Elderberries." With discovery closed, The Power of Elderberries now seeks partial summary judgment on three discrete issues.[1] First, it argues that it should prevail as a matter of law for all alleged violations in the states of North Carolina and South Carolina because it has a superior common law trademark in those states. Second, Power of Elderberries argues that Sundance is not entitled to an award of damages or an injunction in the nine states where Sundance has not used its trademark. And finally, Power of Elderberries claims that Sundance has not suffered and cannot prove actual damages.

In summary, for reasons detailed below, I find that questions of fact exist on

---

[1] The motion for partial summary judgment does not address whether trademark confusion or unfair competition has actually occurred. Everyone seems to agree that those are issues left for the fact-finder to determine.

most of the issues raised in the motion for partial summary judgment. But I am persuaded that the Power of Elderberries has a superior common law trademark in the State of South Carolina, so summary judgment will be granted as it relates to claims in that state.

## Undisputed Facts

The undisputed facts that are relevant to this motion are finite. Kristy Fattore is the owner of Sundance Botanicals. [DE 76 at 3.] Her common law husband, Ben Strupeck, has been working for Sundance part-time since 2015 and full-time since 2017. [DE 76-1 at 8, 19, DE 76-2 at 12, 15.] Sundance first started selling elderberry syrup under the name Loving Earth Remedies in 2012, and the first use of a printed label with the name "ELDERPOWER" on it was January 9, 2015. [DE 76-1 at 12-14.] Sundance filed U.S. Trademark Application No. 88270652 with the United States Trademark Office on January 22, 2019, seeking a trademark registration for the designation ELDERPOWER. [DE 71-4.] The ELDERPOWER trademark was registered on July 30, 2019. *Id.*

The defendant, Power of Elderberries, is a family-owned business that has operated from Myrtle Beach, South Carolina, since 2018. [Decl. of Jessica Lowery, DE 15-1, at ¶¶ 2-3.] Power of Elderberries began using its mark on its elderberry syrup product on July 20, 2018. [DE 71-17, at 5 (Def.'s Answ. To Interrog. No. 5).] Power of Elderberries filed its own trademark application with the Trademark Office later, on June 8, 2019. [DE 71-5.] Interestingly enough, despite being filed after Sundance's, when

2

examining Power of Elderberries' application to register its trademark, the U.S. Trademark Office found the "mark appears to be entitled to register." [DE 69-6.]

## Discussion

Sundance's complaint includes the following claims: Trademark Infringement in Violation of Section 32 of the Lanham Act, 15 U.S.C. ¶ 1114(1)(a); False Designations of Origin and False Descriptions and Representations in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Trademark Infringement in Violation of Common Law; and Unfair Competition in Violation of Common Law. [DE 1.]

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I must take the facts in the light most favorable to the party opposing the motion. *Fulk v. United Transp. Union*, 160 F.3d 405, 407 (7th Cir. 1998).

**I.  Whether Sundance Has Superior Common Law Trademark Rights In South Carolina and North Carolina and is Entitled To Summary Judgment for any Claims Arising From Defendant's Sales or Activity in North and South Carolina**

Power of Elderberries argues that prior to Sundance's registration of its trademark, Power of Elderberries had first use of its product in North and South Carolina, and thus has superior trademark rights in those two states. [DE 69-1 at 8-15.] Sundance responds that when it registered first, that gave it constructive nationwide

3

use of its mark; and Power of Elderberries has failed as a matter of law to establish its right to use its mark in North and South Carolina before Sundance's application for registration. [DE 75 at 8-9.]

      First, some background is needed to address the claims about North and South Carolina. The Lanham Act was passed in 1946, federalizing the existing common law protection of trademarks used in interstate commerce. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001) (citation omitted). To prevail on a trademark infringement claim, a plaintiff must show: (1) it owns a protectable trademark; and (2) there exists a likelihood of confusion on the part of the public. *Nike, Inc. v. "Just Did It" Enter.*, 6 F.3d 1225, 1227 (7th Cir. 1993). A party can show a protectable trademark by establishing priority of use of the mark as a trademark. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). "The registration of a trademark in the United States Patent & Trademark Office establishes constructive use of the trademark nationwide." *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL 2967446, at * 4 (N.D. Ill. Nov. 15, 2004) (citing 15 U.S.C. § 1057(b)).

      However, "[e]ven when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." *Id.* at *4 (citing 15 U.S.C. § 1115(b); *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 104 (7th

Cir. 1970)).  Both parties agree that this is an accurate statement of the law. [DE 69-1 at 8; DE 75 at 10]; *see also Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 674-75 (7th Cir. 1982) ("A good faith junior user is one who begins using a mark with no knowledge that someone else is already using it.  The innocent junior user retains the right to use the mark in an area remote from where the senior user is operating."); *Johnny Balstoff*, 188 F.3d at 434 ("The party who first appropriates the mark through use, and from whom the mark serves as a designation of source, acquires superior rights to it."); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("one must win the race to the marketplace to establish the exclusive right to a mark.").

As noted by Sundance (and not disputed by the Power of Elderberries), this motion is really seeking a ruling as a matter of law on Power of Elderberries' "Innocent/Good Faith Remote User/15 U.S.C. § 1115(b)" affirmative defense. [DE 75 at 9; DE 34 at 9.]  Importantly, Power of Elderberries bears the burden of proving each element of the affirmative defense.  *Pure Imagination*, 2004 WL 2967446, at *10; *Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*, 332 F.2d 264, 272 (4th Cir. 2003) (noting good faith junior user defense is an affirmative defense under the Lanham Act); *Quill Corp. v. LeBlanc*, 654 F.Supp. 380, 385 (D. N.H. 1987) (noting defendant bears the burden of proving its prior adoption without knowledge of the senior user's prior use, the continuous use in that market from date prior to senior user's registration, and

5

the boundaries of that market).² This burden of proof remains the same even if we look at this situation in a little different light. The Seventh Circuit has held that "[r]egistration itself establishes only a rebuttable presumption for use as of the filing date," and a trademark application is always subject to previously established common law trademark rights of another party. *Zazu*, 979 F.2d at 504. An alleged infringer (Power of Elderberries in this case) has the burden to rebut the presumption of a registered mark's validity. *See Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998). In other words, Power of Elderberries clearly bears the burden to prove it had previously established common law trademark rights in the states of North and South Carolina.

"The determination of whether a party has established protectable rights in a trademark is made on a case by case basis, considering the totality of the circumstances." *Johnny Balstoff, Inc.*, 188 F.3d at 433; *see also DSMR, LLC, et al. v. Goldberg*, No. 02 C 5203, 2004 WL 609281, at *4 (N.D. Ill. Mar. 25, 2004) ("The amount of activity sufficient to constitute use is a factual question determined on a case by case basis."). As the Seventh Circuit has held:

> In determining whether a party has established rights in a trademark, we take into account all relevant facts – the totality of the circumstances, as it is usually put. Evidence of actual sales is not necessary to establish ownership. A wide variety of sources may demonstrate 'use' sufficient for public identification of a mark,

---

² Power of Elderberries misstates this burden of proof, arguing "Plaintiff must present evidence to plausibly establish protectable common law trademark rights in these states which are superior to Defendant's trademark rights in these locations." [DE 80 at 2-3.] This is inaccurate.

6

> including advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, as well as in media outlets such as television and radio. So long as the trademarked goods or services are actually provided through or in connection with it, a website that bears a trademark may constitute a *bona fide* use in commerce.

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 666 (7th Cir. 2016) (quotation marks and citations omitted).

And yet the Seventh Circuit has also found that evidence of just a few sales of goods to which the mark was affixed is insufficient to establish trademark ownership. *See, e.g., Zazu,* 979 F.2d at 503-04 (7th Cir. 1992) (finding in nationwide suit where plaintiff hair salon had sold a few bottles of shampoo bearing the mark 'Zazu' over the counter and mailed over state lines, that such limited sales "neither link the Zazu mark with [the plaintiff's product] in the minds of consumers nor put other producers on notice."). Along those lines, the use of the trademark "must be continuous and bona fide to impart ownership – de minimus sales, a few shipments, or pre-marketing tactics that attempt to 'reserve' the mark will not do." *S. Indus., Inc. v. Stone Age Equip., Inc.*, 12 F.Supp.2d 796, 805 (N.D. Ill. 1998)). This requirement to show actual "use" of the mark:

> is neither a glitch in the Lanham Act nor a historical relic. By insisting that firms use marks to obtain rights in them, the law prevents entrepreneurs from reserving brand names in order to make their rivals' marketing more costly. Public sales let others know that they should not invest resources to develp a mark similar to one already used in the trade. Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated.

*Zazu*, 979 F.2d at 503 (citations omitted).

Let's turn to the state of South Carolina first, the state where the Power of Elderberries has operated from since 2018. Power of Elderberries argues that "Plaintiff's actions in and towards South Carolina have been sporadic, casual or transitory and are insufficient to establish common law trademark rights in South Carolina." [DE 69-1 at 8.] In support, it claims Sundance only had a single sale in South Carolina in September 2017. [*Id.* at 8-9.] Power of Elderberries cites to Sundance's response to a motion to produce documents identifying all sales to people or entities in South Carolina from September 2017 through January 22, 2019, to which Sundance responded there was only one sale in South Carolina (to a person named Randi Harper). [DE 69-12 at 2.] In its response, Sundance concedes that prior to January 22, 2019, it made only a single sale into South Carolina. [DE 76 at 2.] In contrast, Power of Elderberries has provided an invoice showing it generated $63,761 in sales in South Carolina in 2018 and $243,439 in South Carolina in 2019.[3] [DE 69-7 at 2.] These numbers evince a huge difference between the sales in South Carolina prior to Sundance's trademark application: Sundance only had one sale, and the Power of Elderberries sold multiple thousands of dollars worth of product in South Carolina.

While sales are not the only consideration, *S.C. Johnson,* 835 F.3d at 666, Sundance also admits that it did not engage in any advertising efforts directed specifically at South Carolina. [DE 76 at 3.] While Sundance argues it is enough to have a website and

---

[3] Sundance filed its application for a trademark on January 22, 2019, so I can't give too much credence to the Power of Elderberries' numbers from 2019 in looking at whether the Power of Elderberries first established common law trademark rights in South Carolina before Sundance filed for its trademark.

8

Facebook account which advertized and promoted its Elderpower elderberry syrup nationally, and have a branded vehicle that traveled across the country [DE 76 at 3-4], I don't think this is sufficient to show continuous and bona fide use of its trademark in South Carolina, especially in light of the robust sales Power of Elderberries had in that state before Sundance applied for a trademark. *See, e.g., Lucent Info. Mgmt, Inc. v. Lucent Techs., Inc.*, 986 F.Supp. 253, 259 (D. Del. 1997) ("For advertising alone to constitute use it must be of a sufficient clarity and repetition to create the required identification and must have reached a substantial portion of the public that might be expected to purchase the goods."). Generalized websites, social media, or Facebook accounts don't suffice to target and reach the people who live in the state of South Carolina.

Even drawing all reasonable inferences in favor of Sundance, as I must at this stage in the proceedings, there is not enough for a fact finder to determine that Sundance continuously used its elderberry mark in commerce in South Carolina, before filing its service mark application. Sundance's one sale very early on, in 2017, with no significant sales or growth following and no targeted marketing and promotional materials to South Carolina, is simply insufficient in light of Power of Elderberries' significant sales in that state. As such, summary judgment is granted on Power of Elderberries' claim that it has superior common law trademark rights in the state of South Carolina.

Applying the same analysis for the state of North Carolina, I conclude that Sundance did have continuous use in that state prior to the application for its

9

trademark. Namely, Sundance's sales in North Carolina were more robust. Sundance has an established retailer in North Carolina (Quiet Myst) and sold more than 4 thousand dollars' worth to that retailer since 2015. [DE 76 at 4.] Additionally, Ben Strupeck submitted an affidavit stating that Sundance sold to 16 other individual customers in North Carolina prior to 2018. [DE 76 at 5; DE 76-4 at 4.] While not overwhelming, these sales in North Carolina do establish continuous sales amounting to much more than de minimus sales. In other words, contrary to the situation in South Carolina, Sundance has sufficient evidence to raise a question of fact over whether it had a priority of use of the mark in North Carolina. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999).

Power of Elderberries is quick to attack the additional sales numbers in North Carolina because they weren't disclosed during discovery. [DE 80 at 6-7.] In response, Sundance claims it doesn't maintain its sales broken down by state as a part of its ordinary course of business (which is why this was not disclosed earlier), but Strupeck was eventually able to spend hours working to generate sales for particular customers on Quickbooks, and during his review, found the 16 other customers in North Carolina in addition to Quiet Myst. [DE 75 at 13 n.4; DE 76-4 at 4.] I don't want to get embroiled in a discovery dispute in the middle of a motion for summary judgment. Power of Elderberries never filed a motion to compel or a motion to strike. Although evidence relied upon in the summary judgment context must be of a type that would be admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), because there is

10

no pending motion regarding the evidence's admissibility, I'm not in a position right now to rule on this evidence. As such, I have given it the weight I deem necessary.

In sum, I believe there is enough for a fact finder to determine that Sundance continuously used its elderberry mark in commerce in North Carolina before filing its service mark application. Therefore, the motion for summary judgment as to this issue in North Carolina will be denied.

## II.  Whether Power of Elderberries is Entitled to Summary Judgment for All Claims Based on Geographic Areas Where Sundance Has Not Used its Trademark

Power of Elderberries argues Sundance is not entitled to damages or an injunction in the 9 states (Connecticut, Delaware, Idaho, Maine, Mississippi, Nebraska, North Dakota, South Dakota, and Wyoming) where it has not yet sold its ELDERPOWER designation. [DE 69-1 at 16-17.] The main case cited by Power of Elderberries in support of this contention is from the Fourth Circuit, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 931-32 (4th Cir. 1995). However, this case specifically states that "[u]nder the Lanham Act, the senior owner of a federal registration has superior priority over all junior users, but a court will enjoin the junior user only if the registrant is likely to enter, or has entered, the junior user's trade territory." *Id.* The court, citing McMarthy on Trademarks, went on to explain that "the registrant has a nationwide *right*, but the injunctive *remedy* does not ripen until the registrant shows a likelihood of entry into the disputed territory . . . the junior user's use of the mark can continue only so long as the federal registrant remains outside the

11

market area." *Id.* at 932 (emphasis in original).

Summary judgment is not warranted in this instance for a few reasons. First, based upon the language in *Lone Star Steakhouse*, I'm not even sure if Sundance's claims have ripened yet in these states, where Sundance admittedly hasn't sold product yet.[4] Second, Power of Elderberries itself has not given me any information whatsoever that it has used its mark in any of these states. In other words, Power of Elderberries can't establish that it is entitled to "continue" using its mark in these states when it has not established its use in the states in the first place. *See Lone Star Steakhouse*, 43 F.3d at 932. Finally, Sundance has put forth some evidence that it is likely to enter the market in these states where it has not yet sold ELDERPOWER. For example, Sundance sells nationwide on the Internet, advertises nationally, and has sold into 42 of the 50 states as of September 2020. [DE 76 at 6.] A trier of fact could determine that Sundance is "likely to enter" the market in these states soon. Therefore, summary judgment is inappropriate on this issue.

### III. Whether Power of Elderberries is Entitled to Summary Judgment Regarding its Claims for Damages

Power of Elderberries argues that Sundance is not entitled to any monetary award for actual damages. Under the Lanham Act, if Sundance proves violation of its trademark rights or a violation of Section 43(a), it would be entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the

---

[4] The exception to this statement might be Idaho, where Sundance first sold product in that state in September 2019. [DE 69-9, at 5, Interrogatory Resp. No. 1.]

plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In its complaint, Sundance makes a claim for all damages provided under the Lanham Act. [DE 1 at 16.] "Items alleged as either unjust enrichment to the defendant or damages suffered by the plaintiff must, of course, have been caused by the infringement itself; in addition the amount must be provable, although some uncertainty in making this calculation is allowed." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994).

In order to recover damages for a violation of the Lanham Act, Sundance has to prove Power of Elderberries' violation, the violation caused actual confusion among consumers of the plaintiff's product, and as a result, Sundance suffered actual injury (for example, a loss of sales, profits or present value/goodwill). *See Wine & Canvas Dev. LLC v. Weisser*, No. 1:11-cv-01598-TWP-DKL, 2015 WL 1969449, at *7 (S.D. Ind. May 1, 2015). In this case, Power of Elderberries claims Sundance hasn't produced any evidence substantiating its claim for actual damages. [DE 69-1 at 19.]

In response, Sundance insists there is evidence in the record to support a finding of actual confusion, and as a result, actual damages sustained by Sundance. [DE 75 at 18.] In particular, Sundance points to a retailer in Valparaiso, Indiana since January 2019, a place called Bun's Soapbox. [DE 75 at 18-20.] Jamie Frankhauser is the owner of Bun's Soapbox. [DE 76 at 7.] In 2019, Power of Elderberries' elderberry syrup was the only product Frankhauser carried at her store. [Frankhauser Dep., DE 76-8 at 10, 23.] Bun's is located within 1.8 miles of 5 current and 2 former Sundance retail locations. [DE 76 at 4.] Sundance points to comments on Sundance's Facebook page on May 18,

13

2019, where people made posts, and one comment by a person named Angie Crowe who wrote, "Jamie Frankhauser has this at her store. I want to try it." [DE 76-8 at 20-22, 25-26.] Of course, Frankhauser's store doesn't sell Sundance's product; it sells the Power of Elderberries instead. According to Sundance, this is proof of product confusion, and actual damages, at a minimum, in the amount of sales made by Defendant to Bun's Soapbox. [DE 75 at 19.] Additionally, in October 2019, the owner of Sundance, Kristy Frattore, walked into Bun's Soapbox, and when she approached Frankhauser and introduced herself as "Kristy with ElderPower Elderberry," Frankhauser answered, "Wait. Who are you? We already carry ElderPower Elderberry." [Frattore Dep., DE 76-1 at 10-11.]

Power of Elderberries claims that unauthenticated Facebook posts and inadmissible hearsay that distorts the testimony of Ms. Frankhauser are mere speculation and not enough to prevent summary judgment as to whether actual damages are recoverable. On summary judgment, materials must be admissible as evidence at trial, "although the form produced at summary judgment need not be admissible." *Igasaki v. Illinois Dep't of Financial and Professional Regulation*, 988 F.3d 948, 955 (7th Cir. 2021) (citation omitted). While there might be evidentiary hurdles regarding whether the Facebook posts are admissible at trial (although query whether the posts are being introduced to prove the truth of the matter asserted or for another reason), certainly Ms. Frattore could be called to testify at trial, as well as Ms. Frankhauser. "On summary judgment . . . a court may not weigh the evidence, or

14

decide which inferences to draw from the facts." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010).

Although the evidence seems pretty weak, I do think Sundance has raised a genuine dispute of fact going to actual confusion. As such, summary judgment is not appropriate at this stage. I'm not comfortable foreclosing any possibility of recovering actual damages, when the fact-finder has yet to determine whether there was a likelihood of confusion or infringement. *See, e.g., Black & Decker Corp. v. Positec USA, Inc.*, No. 11-cv-5426, 2015 WL 1543262, at *35 (N.D. Ill. Mar. 31, 2015) (denying summary judgment on claim for actual damages under Lanham Act because the plaintiff raised "genuine disputes of fact going to actual confusion."). Of course, if Sundance's damages case turns out at trial to be a dud, I can certainly return to the issue after Sundance has rested its case and grant judgment as a matter of law at that time. *See* Fed. R. Civ. P. 50. For now, summary judgment is denied as to this issue.

## Conclusion

For the above referenced reasons, Defendant, The Power of Elderberries' sealed motion for partial summary judgment [DE 69] and redacted motion for partial summary judgment [DE 71] are both GRANTED IN PART and DENIED IN PART as follows: the motions are GRANTED as to the ruling as a matter of law that Power of Elderberries has a superior common law trademark right in South Carolina; the motions are DENIED as to finding Power of Elderberries has a superior common law trademark right in North Carolina, on the issue of damages or an injunction available in

15

geographic areas where Sundance has not used its trademark, and on the issue of whether Sundance can prove actual damages.

SO ORDERED.

ENTERED: August 19, 2022.

                                                /s/   Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT